195 So.2d 20 (1967)
FIREMAN'S FUND INSURANCE COMPANY, a Corporation, Appellant.
v.
Ralph F. VOGEL and Ethel B. Vogel, Husband and Wife, and J. Gerald Murphy, Appellees.
No. 7019.
District Court of Appeal of Florida. Second District.
February 8, 1967.
*21 Joseph W. Bradham, of Ramseur, Bradham, Lyle & Skipper, St. Petersburg, for appellant.
Robert L. Williams, of Earle & Williams, St. Petersburg, for appellee Murphy.
James M. McEwen of Gibbons, Tucker, McEwen, Smith & Cofer, Tampa, for appellees Vogel.
LILES, Judge.
Appellant, garnishee below, brings this appeal from a summary final judgment entered by the trial court in favor of appellees.
It appears that in May of 1959 plaintiffs suffered injury in an automobile collision with one John L. Doyle. Plaintiffs retained defendant attorney to represent them and to file suit against Doyle. Doyle died on July 5, 1961, but defendant failed to file a claim on behalf of plaintiffs against Doyle's estate within the statutory period. He filed suit on plaintiffs' behalf in May of 1962, but this suit was dismissed with prejudice on July 16, 1962 for failure to file a claim against Doyle's estate. Plaintiffs thereafter secured the services of another attorney who ultimately filed a malpractice suit against defendant. Plaintiffs secured a final judgment against defendant in that suit and brought garnishment proceedings against appellant insurance company, who was defendant's malpractice insurance carrier. Appellant answered that it was not liable as *22 defendant had breached the terms of his insurance contract. The trial judge entered final summary judgment finding that the loss sustained by defendant in the malpractice suit was covered by his insurance policy with appellant company and that the conduct of appellant's agents constituted a waiver by appellant to deny coverage "* * * in the event that its insured committed a breach of the terms of said insurance policy * * *." The trial judge made no determination as to whether defendant breached the terms of the policy.
The issue to be determined on appeal is whether the pleadings, affidavits, depositions, exhibits and other papers on file show conclusively that there is no genuine issue of material fact to be tried. Holl v. Talcott, 191 So.2d 40 (Fla. 1966). More precisely the question is whether the record conclusively shows that appellant waived its right to deny coverage.
In its answer, appellant alleged in essence that defendant attorney had failed to comply with Condition 3 of the insurance policy which provided in part:
"3. Notice of Claim or Suit. Upon the insured becoming aware of any act or omission which might reasonably be expected to be the basis of a claim or suit covered hereby, written notice shall be given by or on behalf of the insured to the company or any of its authorized agents as soon as practicable, together with the fullest information obtainable. * * *"
The record reflects that the personal injury action against the estate of John L. Doyle filed by defendant was dismissed on July 16, 1962 for failure to comply with § 733.16, Fla.Stats., F.S.A. In August of 1962, defendant contacted by telephone the agent through whom he had obtained his malpractice insurance with appellant to inquire if the policy was still in force. Upon being told that it was, defendant asked for an endorsement to show a change of address and requested a duplicate copy of the policy. Defendant claimed in his affidavit that when he received a copy of the policy, he advised the agent of the possibility of a claim against him. The agent denied this, stating that he first became aware of the possibility on November 21, 1962.
In the meantime, plaintiffs had secured the services of another attorney to represent them as against defendant. This attorney advised defendant of this fact, by letter, on September 8, 1962. Plaintiffs' attorney suggested that defendant contact his insurance carrier and permit plaintiffs' attorney to have an appointment with defendant and his carrier. Throughout the latter part of September and the month of October, 1962, there was a series of letters and telephone calls in an attempt to set up an appointment between plaintiffs' attorney and defendant, apparently to no avail.
On November 21, 1962, appellant's agent wrote a letter to appellant stating briefly that "I have had a brief message that Mr. Murphy [defendant] may incur a claim due to late filing of some papers." On December 10, 1962, this same agent wrote a letter to defendant apologizing for the delay in getting an adjuster to him because "I failed to realize that this was an immediate claim situation." The agent informed defendant that a private adjuster, one George Hannaman, would be handling the claim.
Hannaman sent a Notice of Loss to appellant company on December 13, 1962. This report stated that the actual date of loss was unknown. In describing the loss, Hannaman stated:
"Reported by the insured's secretary, one Barbara Lucas, that the insured's client, one Ralph Vogel and wife, filed claim against the estate of John Doyle for injuries and property damage sustained in an automobile accident and that the insured lawyer, acting in their behalf, failed to file suit within the statutory period required by Florida State Law.

*23 * * * * * *
"The above information is sketchy in that we have left word with Mr. Murphy to call us and arrange an appointment but up to date he has failed to comply with our request. We felt, however, this report should be submitted in order that you may create a file. * * *"
Hannaman wrote defendant on January 2, 1963 stating that since December 10, 1962, he had called defendant's office at least four times, had talked with his secretary, and had asked that defendant return the calls. The letter further stated that:
"* * * To date we have received no communication from you either verbal or written in this regard. Perhaps you do not wish to call upon the insurance carrier to investigate or defend this claim and we would appreciate your contacting us at your very earliest opportunity.
"If, however, you should feel that you wish the coverage of your policy I must notify you that you are bound to give us notice of this claim as soon as practicable after first knowledge that you may have of this claim. If we do not receive an immediate reply we will have to consider that your failure to give us sufficient information and notice as to the facts of this case that there is a violation of your policy within the terms of the conditions thereof requiring proper notice."
Hannaman's affidavit states that the first conference he had with defendant was on January 23, 1963. This conference prompted Hannaman to write appellant company that although he received some information about the case that:
"Mr. Murphy stated that he was not in a position at the time of our interview to really go into the case as he did not have the court file on hand and very few papers in his own file. In my presence he called the County Seat at Clearwater and asked the Clerk of the Court to forward the file back over to St. Petersburg. He also was to call the plaintiffs' attorney, Mr. McEwen. A second interview was arranged for today, the 24th, at 1:30 p.m. However a short while ago we received a call from Mr. Murphy asking to postpone this conference as he was pressed by other matters. * * * He agreed to call my office tomorrow morning and arrange with my secretary for an appointment at a time which would be suitable, preferably tomorrow, for both of us."
Hannaman wrote defendant on February 11, 1963, stating that although the appointment for January 24th was "understandably" not kept, Hannaman had not heard from defendant since that time "in spite of further telephone calls." Hannaman's letter said that if his office did not hear from defendant in the immediate future, they could only conclude that he did not wish to be afforded the protection of the insurance policy.
Hannaman wrote appellant on February 18, 1963 to the effect that plaintiffs' counsel had contacted him regarding the claim and asked him about developments in the case. Hannaman said he told plaintiffs' counsel "* * * very frankly that we did not have enough information from Mr. Murphy to assume a position. * * *" The letter went on to inquire whether appellant felt their position was strong enough to deny coverage. Appellant wrote defendant on February 21, 1963 stating that Hannaman had attempted "* * * on many occasions to get the full story from you concerning this. * * *" Appellant advised defendant that it fully reserved all its rights under the policy and did not waive any terms or conditions of that policy. Appellant stated that if defendant did not immediately get in touch with Hannaman, it would be necessary to decline to cover him. Defendant and Hannaman finally had a conference on February 26, 1963, with plaintiffs' counsel. When suit was ultimately filed *24 against defendant, appellant denied coverage.
The most frequent and generally accepted definition of the term "waiver" is the intentional relinquishment of a known right, or the voluntary relinquishment of a known right, or conduct which warrants an inference of the relinquishment of a known right. 92 C.J.S. Waiver p. 1041. When a waiver is implied from conduct, the acts, conduct, or circumstances relied upon to show waiver must make out a clear case. Gilman v. Butzloff, 155 Fla. 888, 22 So.2d 263 (1945); Masser v. London Operating Co., 106 Fla. 474, 145 So. 72 (1932). Furthermore, waiver does not arise from forbearance for a reasonable time. Gilman v. Butzloff, supra. There can be no waiver unless the party against whom the waiver is invoked was in possession of all the material facts. 92 C.J.S. Waiver p. 1059.
We are of the opinion that the pleadings, depositions, affidavits, etc. on file do not conclusively show that appellant's conduct amounted to a waiver of the terms and conditions of its insurance contract with defendant. The record reveals a somewhat frustrating attempt by appellant and its agents to acquire full information about the case. The record reflects that as late as January 23, 1963, appellant had not yet even been able to find out the date of the alleged loss. The communications between appellant and its agents, between appellant and defendant and between appellant's agents and defendant do not indicate a clear intention on appellant's part to waive any of the terms of the policy. Neither does the record as it stands show conduct by appellant and its agents sufficient to conclusively establish a waiver. Thus it was error to enter summary judgment to that effect.
We note that the trial judge made no finding as to whether defendant breached the terms of the policy or whether such breach, if it occurred, was prejudicial to appellant. This opinion is not to be construed in any way as passing upon those issues or any issues other than the question of a conclusive showing of waiver.
The summary final judgment appealed is reversed and the case remanded for further proceedings not inconsistent with this opinion.
SHANNON, Acting C.J., and ODOM, ARCHIE M., Associate Judge, concur.