547 So.2d 1266 (1989)
AMERICAN SOMAX VENTURES, F/K/a Windward Isle, a Florida General Partnership, Appellant,
v.
Theodore R. TOUMA and Lena J. Touma, His Wife, Appellees.
No. 88-1479.
District Court of Appeal of Florida, Fourth District.
August 23, 1989.
*1267 Richard P. Zaretsky of Richard P. Zaretsky, P.A., and Robert E. Oglesby of Robert E. Oglesby, P.A., West Palm Beach, for appellant.
Susan M. Seigle of Gay, Ramsey & Lewis, P.A., West Palm Beach, for appellees.
WARNER, Judge.
Appellant, a home builder, complains that the trial court erred in entering judgment for return of appellees' homebuyer's deposit, finding that it had materially breached a purchase and sale agreement between itself and appellees.
On February 19, 1986, the parties entered into a contract whereby appellees agreed to purchase a lot and single-family home to be constructed by appellant. Appellees paid initial deposits totalling $14,800. The contract provided an estimated completion date of August 29, 1986. However, it stated that the date was approximate, subject to other provisions of the contract. Article VII, Standard Terms and Conditions, paragraph 11, provided:
Delays in Estimated Completion Date. Seller shall not be liable for any expenses or inconveniences to purchaser which may directly or indirectly arise from delay of completion or from delay of delivery of possession. Further, such delays shall not serve to cancel, amend, or diminish any of the purchaser's obligations herein undertaken. Said closing date shall be extended by any time lost to the builder as a result of delays caused by acts of God, acts of governmental authority(s), flood, hurricane, strikes, supplies, materials and labor conditions beyond seller's control, or any other similar causes not within seller's control. Seller may otherwise extend the estimated completion date by written notice to the purchaser. In no case shall this date be greater than two (2) years from the date of this contract.
The contract further provided that upon the purchaser's default, the seller could cancel the agreement and retain all monies paid as liquidated damages, and upon seller's default, purchaser could require the return of all deposit monies by written demand.
Construction was not commenced until sometime in August. The appellees visited the site in August and executed a change order for improvements which clearly could not be accomplished in time for the August 29th closing. The closing did not take place on that date, and appellees never demanded a closing at that time. The appellees paid for the extras in the change order after the estimated closing date. When they called appellant in September, appellees were told closing would not occur until October. In October, closing was put off until November. Appellees made some color selections for the house at this time. A November call informed appellees that closing would not take place until December.
In December, appellees wrote to appellant's president requesting permission from appellant to assign their agreement, because the contract provided that it was not assignable without written permission of appellant. The letter did not mention any specific person to whom they wished to assign their obligation, and the appellant rejected this request. However, the letter showed that appellee continued to evidence an intention to abide by the contract, stating *1268 "I have no problems with you on the house but have decided to remain on the water at my present home."
On January 22, 1987, appellees, through their attorney, sent appellant a letter terminating their contract for appellant's failure to close on August 29, 1986, and failing to give written notice of extensions of closing, as provided in the contract. They demanded the return of their deposit. By a letter postmarked January 26, 1987, appellant requested that appellees come in to pick final colors and stated that closing would take place on February 10th. Appellees failed to close on that date. Appellant refused to return the deposit, and appellees filed suit.
In rendering judgment for appellee the trial court held that appellant had materially breached the contract by failing to give written notice of the extensions. Therefore, appellees were entitled to the return of all deposit monies paid plus interest. Nowhere in the final judgment did the trial court address appellant's affirmative defense of waiver.
Time was not of the essence of this contract. The closing date in the contract was specifically an "estimated" date. Furthermore, the contract also allowed for extension for up to two years from the estimated closing date. Therefore appellant could only be held in breach of the contract for failure to close if the appellees had first made time of the essence by demanding closing and giving a reasonable time after demand for performance by appellant. Henry v. Ecker, 415 So.2d 137 (Fla. 5th DCA 1982), rev. denied, 429 So.2d 5 (Fla. 1983). Since appellees never gave appellant any opportunity to perform after demand for closing, the trial court could not have held it in material breach for failure to close.
However, although acknowledging these general principles, appellees maintain that the trial court found appellant in breach of the clause requiring the appellant to give written notice of extensions of the closing date, rather than for failure to close. Therefore, a demand to close was unnecessary. We need not decide whether the failure to give written notice of extension of closing was a material breach, because in this case the evidence is undisputed that appellees waived this breach.
Waiver is commonly defined as the intentional or voluntary relinquishment of a known right. Fireman's Fund Insurance Co. v. Vogel, 195 So.2d 20, 24 (Fla. 2d DCA 1967); Sentry Insurance v. Brown, 424 So.2d 780, 784 (Fla. 1st DCA 1982), rev. denied, 430 So.2d 452 (Fla. 1983). And while conduct may imply such waiver, the conduct relied upon to do so must make out a clear case of waiver. Taylor v. Kenco Chemical and Manufacturing Corp., 465 So.2d 581, 587 (Fla. 1st DCA 1985); Fireman's Fund, 195 So.2d at 24. Furthermore, waiver does not arise merely from forbearance for a reasonable time. Continental Real Estate Equities, Inc. v. Rich Man Poor Man, Inc., 458 So.2d 798, 799 (Fla. 2d DCA 1984), citing Gilman v. Butzloff, 155 Fla. 888, 22 So.2d 263 (1945).
The facts supporting appellees' waiver of the written notice of the extension of the closing date are uncontradicted in the evidence. Although closing was to take place on August 29, 1986, appellees were orally informed prior to their site inspection on August 26th that closing would not take place as anticipated. At that time appellees executed a change order which included pouring a larger concrete slab. Payment for the additional cost of the changes ordered was not made by appellees until after the estimated date of closing. Appellees selected colors for their home in October, indicating an intention to continue to perform under the contract. Finally, in December appellees not only attempted to assign their contract, thus indicating their intentions of performing under it, but also stated in a letter that they had no problem with appellant or with the house. Thus, appellees acted in such a manner that appellant could have reasonably inferred that the right to written notice of the delay of closing had been waived. See Garner v. Margery Lane, Inc., 242 So.2d 776, 779 (Fla. 4th DCA 1970). Since their deliberate acts recognized the contract as still subsisting, appellees' conduct amounts to a waiver of the *1269 breach of the notice provision of the contract. See Shouse v. Doane, 39 Fla. 95, 21 So. 807 (1897).
Consequently, even if the trial court were correct in finding a material breach of the covenants of the contract by failing to give written notice of the extension of the time for closing, the trial court erred in failing to find that such breach had been waived by appellees. Therefore, appellees were obligated to close on the contract with appellant, and their refusal amounted to a default under the contract, justifying the seller's retention of appellees' deposit as liquidated damages.
While we reverse the trial court's judgment for appellees, we remand for further proceedings on the issue of the damages of appellant. Appellees raised the question of whether the liquidated damage clause was a penalty, and whether the liquidated damages were grossly disproportionate to the actual damages. Since these are issues of fact, it is not appropriate for us to resolve them on this appeal.
Reversed and remanded for further proceedings.
ANSTEAD and GUNTHER, JJ., concur.